**HAYES PAWLENKO LLP**
MATTHEW B. HAYES (SBN 220639)
mhayes@helpcounsel.com
KYE D. PAWLENKO (SBN 221475)
kpawlenko@helpcounsel.com
1414 Fair Oaks Avenue, Unit 2B
South Pasadena, CA 91030
(626) 808-4357

Attorneys for Plaintiff:
ANTONIO PEREZ-CRUET

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO PEREZ-CRUET, individually and as a representative of a class of participants and beneficiaries on behalf of the Qualcomm Incorporated Employee Savings and Retirement Plan,<br><br>             Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED; QUALCOMM INCORPORATED US RETIREMENT COMMITTEE; and DOES 1 to 10 inclusive,<br><br>             Defendants. | CASE NO. 3:23-cv-01890-BEN-MMP<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:  February 26, 2024<br>Time:  10:30 a.m.<br>Courtroom:  5A |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................ 1

STATEMENT OF FACTS ....................................... 2

ARGUMENT .................................................... 4

I.    IRS Regulation § 1.401-7(a) Does Not Apply
to the Qualcomm Plan. ........................... 4

II.   The *Proposed* IRS Regulation is Likewise of
No Consequence Here. ........................... 7

III.  ERISA Governs Decisions Involving the
Management and Disposition of Plan Assets. ... 9

IV.  Plaintiff Adequately Alleges a Breach of
Fiduciary Duties. ................................ 11

    A.  Compliance with the Existing and Proposed
IRS Regulations is Not a Defense to ERISA
Claims. ....................................... 13

    B.  Defendants Cannot Hide Behind the Plan
Terms. ........................................ 13

V.   Plaintiff States a Claim for Unlawful Inurement. ... 16

    A.  Plan Assets Cannot Forgive Employer Debts. ... 16

    B.  Forfeitures Were Used to Forgive Qualcomm's
Debts to the Plan. ............................ 20

    C.  Qualcomm Cannot Satisfy the Requirements
for a Refund of the Forfeited Contributions. ... 20

VI.  Plaintiff States a Claim for Prohibited Transactions. ... 21

    A.  Plaintiff Alleges a Transaction That Plausibly

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

i

Violates § 1106(a).      21

B.    Plaintiff Alleges Self-Dealing That Plausibly Violates § 1106(b)(1).      23

VII.    Plaintiff Alleges a Plausible Breach of the Duty to Monitor.      24

CONCLUSION      25

# TABLE OF AUTHORITIES

**Cases**

*Akers v. Palmer,*
 71 F.3d 226 (6th Cir. 1995)     11

*Alexander v. City of San Diego,*
 2011 WL 6734841 (S.D. Cal. Dec. 21, 2011) 12

*Asner v. SAG-AFTRA Health Fund,*
 557 F. Supp. 3d 1018 (C.D. Cal. 2021)  11

*Bafford v. Northrop Grumman Corp.,*
 994 F.3d 1020 (9th Cir. 2021)    12

*Barker v. Am. Mobil Power Corp.,*
 64 F.3d 1397 (9th Cir. 1995)    12, 21

*Bd. of Trs. v. Grand River Navigation Co., Inc.,*
 2021 WL 1215060 (D. Md. Mar. 30, 2021) 18

*Brit. Motor Car Distributors, Ltd. v. San Francisco
Auto. Indus. Welfare Fund,*
 882 F.2d 371 (9th Cir. 1989)    21

*Brown v. Health Care & Ret. Corp. of Am.,*
 25 F.3d 90 (2d Cir. 1994)     17

*Carriers Container Council, Inc. v. Mobile S.S.
Ass'n Inc.,*
 896 F.2d 1330 (11th Cir. 1990)   21

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent.
Transp., Inc.,*
 472 U.S. 559 (1985)      14, 22

*Chao v. Anderson,*
    2007 WL 1448705 (E.D. Va. May 9, 2007)       18, 20

*Chao v. Malkani,*
    452 F.3d 290(4th Cir. 2006)       17

*Cline v. Indus. Maint. Eng'g & Cont. Co.,*
    200 F.3d 1223 (9th Cir. 2000)       9

*Commissioner v. Keystone Consolidated Industries, Inc.,*
    508 U.S. 152 (1993)       22, 23

*Coulter v. Morgan Stanley & Co. Inc.,*
    753 F.3d 361 (2d Cir. 2014)       10

*Doe v. United Behavioral Health,*
    523 F. Supp. 3d 1119 (N.D. Cal. 2021)       15

*Esden v. Bank of Bos.,*
    229 F.3d 154 (2d Cir. 2000)       13

*Estate of Howard v. Comm'r,*
    910 F.2d 633 (9th Cir. 1990)       8

*Feinberg v. T. Rowe Price Grp., Inc.,*
    2021 WL 488631 (D. Md. Feb. 10, 2021)       15

*Fifth Third Bancorp v. Dudenhoeffer,*
    573 U.S. 409 (2014)       11, 12, 14

*Guidry v. Sheet Metal Workers Nat. Pension Fund,*
    493 U.S. 365 (1990)       8

*Holland v. Arch Coal, Inc.,*
    947 F.3d 812 (D.C. Cir. 2020)       16, 17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Holliday v. Xerox Corp.*,
    732 F.2d 548 (6th Cir. 1984)                                    19

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)                                          4, 9, 19

*In re McIntyre*,
    222 F.3d 655 (9th Cir. 2000)                                      9

*Int'l Bhd. of Painters & Allied Trades Union and*
*Indus. Pension Fund v. Duval*,
    925 F. Supp. 815 (D.D.C. 1996)                                   23

*McDaniel v. Chevron Corp.*,
    203 F.3d 1099 (9th Cir. 2000)                                    13

*Miller v. Xerox Corp. Ret. Income Guarantee Plan*,
    464 F.3d 871 (9th Cir. 2006)                                      5

*Operating Eng'rs Loc. 324 Health Care Plan v.*
*Dalessandro Cont. Grp., LLC*,
    2012 WL 831758 (E.D. Mich. Mar. 12, 2012)                        18

*Reklau v. Merchants Nat. Corp.*,
    808 F.2d 628 (7th Cir. 1986)                                     13

*Sec'y of Labor v. Seward Ship's Drydock, Inc.*,
    937 F.3d 1301 (9th Cir. 2019)                                    24

*Solis v. Webb*,
    931 F. Supp. 2d 936 (N.D. Cal. 2012)                             24

*Spink v. Lockheed Corp.*,
    125 F.3d 1257 (9th Cir. 1997)                                    19

*Tedori v. United States*,
    211 F.3d 488 (9th Cir. 2000)                                      8

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

v

*Thole v. U.S. Bank N.A.,*
    140 S. Ct. 1615 (2020)                                    4

*Thondukolam v. Corteva, Inc,*
    2020 WL 1984303 (N.D. Cal. Apr. 27, 2020)               11

*Tr. Of S. Cal. Bakery Drivers Security Fund v.
Middleton,*
    474 F.3d 642 (9th Cir. 2007)                            10

*United Food & Com. Workers Int'l Union-Indus.
Pension Fund v. Bank of N.Y. Mellon,*
    2014 WL 4627904 (N.D. Ill. Sept. 16, 2014)             24

*Waller v. Blue Cross of Cal.,*
    32 F.3d 1337 (9th Cir. 1994)                            10

*Zamani v. Carnes,*
    491 F.3d 990 (9th Cir. 2007)                            12

**Statutes**

26 U.S.C. § 401                                         5, 6, 13

26 U.S.C. § 412                                             7

26 U.S.C. § 414                                             6

26 U.S.C. § 430                                             7

26 U.S.C. § 431                                             7

26 U.S.C. § 433                                             7

26 U.S.C. § 4975                                           22

29 U.S.C. § 1002                                      10, 21, 22

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

vi

| | |
|---|---|
| 29 U.S.C. § 1103 | 16, 17, 18, 21 |
| 29 U.S.C. § 1104 | 3, 11, 12, 14, 15 |
| 29 U.S.C. § 1106 | 21, 22, 23, 24 |
| 29 U.S.C. § 1144 | 7-8 |

**Regulations**

| | |
|---|---|
| 26 C.F.R. § 1.401-0 | 7 |
| 26 C.F.R. § 1.401-1 | 6 |
| 26 C.F.R. § 1.401-7 | 1, 4, 5, 6, 7, 13 |
| 29 C.F.R. § 2509.75-8 | 24 |

**Other Authorities**

| | |
|---|---|
| Pub. L. No. 87-792, 76 Stat. 809 (1962) | 5 |
| Pub. L. No. 93-406, 88 Stat. 829 (1974) | 6 |
| Pub. L. No. 99-514, 100 Stat. 2085 (1986) | 6 |
| Rev. Rul. 71-313, 1971 WL 26693 (1971) | 6 |
| 28 Fed. Reg. 10115 (1963) | 5 |
| 42 Fed. Reg. 42320 (1977) | 7 |
| 88 Fed. Reg. 12282 (2023) | 7, 8, 13 |

**INTRODUCTION**

The Employee Retirement Income Security Act ("ERISA") requires fiduciaries to act in the best interests of plan participants, proscribes self-dealing and other "prohibited transactions" and prevents the plan's assets from inuring to the benefit of an employer. The question in this case is whether these statutory commands are violated when, following a participant's break in service, an employer-fiduciary reallocates the unvested portion of the participant's account (called "forfeitures") to offset its own contributions instead of using these funds to defray plan expenses borne by participants.

Defendants Qualcomm Incorporated and the Qualcomm Incorporated US Retirement Committee (together "Defendants") do *not* dispute that (1) forfeitures are "plan assets," (2) Defendants were acting as "fiduciaries" when deciding how to allocate these funds, (3) the plan document allowed forfeitures to be used to cover plan expenses, and (4) the plan and its participants were harmed by Defendants' refusal to use any forfeitures to defray the expenses charged to participant accounts. *See* Compl. ¶¶ 8, 12, 17-20, 24.

Instead, Defendants move to dismiss based on an assertion that their conduct is immune from scrutiny "as a matter of law" because "Treasury Department regulations explicitly require" that forfeitures "be used as soon as possible to reduce the employer's contributions under the plan." Motion to Dismiss ("MTD") pp. 2-3, 5. But the regulation Defendants rely upon – 26 C.F.R. § 1.401-7(a) – has *never* applied to the plan at issue here and, as the Treasury Department has acknowledged, was rendered defunct following the passage of ERISA. Accordingly, Defendants' motion to dismiss should be denied.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1

**STATEMENT OF FACTS**

Plaintiff Antonio Perez-Cruet ("Plaintiff") is a participant in the Qualcomm Incorporated Employee Savings and Retirement Plan ("Plan" or "Qualcomm Plan").  Compl. ¶ 1.  The Plan is a defined contribution plan sponsored by defendant Qualcomm Incorporated ("Qualcomm").  Compl. ¶¶ 4, 6; MTD p. 4.  It is intended to be a tax-qualified "profit sharing plan."  Exh. 1 (Plan Document Art. I).[1]

In addition to being the Plan sponsor, Qualcomm is also the Plan administrator with broad authority over the administration and management of the Plan.  *See* Compl. ¶ 6; Exh. 1 (Plan Document ¶¶ 12.1, 12.2).  Defendant Qualcomm Incorporated US Retirement Committee (the "Committee") was created by Qualcomm to assist with the control and management of the Plan's assets.  *See* Compl. ¶ 7; Exh. 1 (Plan Document ¶¶ 12.3, 12.5).  Both Qualcomm and the Committee are named fiduciaries of the Plan.  *See* Compl. ¶ 8; Exh. 1 (Plan Document ¶¶ 12.2, 12.3).

Qualcomm is obligated to make an annual "Matching Contribution" to the Plan on behalf of each eligible participant at specified matching rates, ranging from 10% to 100%, depending on the total amount contributed by the participant.  *See* Exh. 1 (Plan Document ¶ 4.4); Exhs. 2-4 (Form 5500s for 2019 through 2021 at Note 1 to Financial Statements ("Company Contributions")); Compl. ¶ 12.  Absent an exception, participants do not fully vest in these contributions until they complete two years of service.  Compl. ¶ 16; Exh. 1 (Plan Document ¶ 7.2).

---

[1] Exhibits 1 through 5 cited herein are attached to the declaration of Matthew B. Hayes that was filed with the Request for Judicial Notice in support of this Opposition.

Participants who separate from service before these contributions have fully vested forfeit their right to the unvested portion of the contributions. Compl. ¶ 17; Exh. 1 (Plan Document ¶ 7.3(a)). The Plan document entrusts Qualcomm with "discretion" to decide how the forfeited contributions should be reallocated. Compl. ¶ 19; Exh. 1 (Plan Document ¶ 7.3(b)). In this regard, the Plan document provides that "[f]orfeitures shall be used at the discretion of the Company to reduce the Employer Contributions next payable under the Plan or applied to Plan administrative expenses." *See* Exh. 1 (Plan Document ¶ 7.3(b)).

The expenses incurred for administering the Qualcomm Plan are paid by the Plan with Plan assets. Compl. ¶ 14; Exh. 1 (Plan Document ¶ 11.1). Absent these expenses being covered by other funds in the Plan, the participant accounts are each charged with an allocation of the Plan expenses. Compl. ¶ 14. The deduction of these administrative expenses from participant accounts reduces the funds available to participants for distribution and/or investing. Compl. ¶ 15.

Although ERISA requires fiduciaries to "defray[] reasonable expenses of administering the plan[,]" 29 U.S.C. § 1104(a)(1)(A)(ii), and although the Plan permits forfeitures to be used to cover Plan expenses, Defendants consistently declined to use any forfeitures for such purpose. Compl. ¶ 19. Instead, Defendants have chosen to use all forfeitures in the Plan to offset Qualcomm's "Matching Contributions" debt to the Plan. Compl. ¶¶ 20-23; Request for Judicial Notice, Exhs. 2-4 (Form 5500s for 2019 through 2021 at Note 1 to Financial Statements (specifying that "forfeitures" are "used to offset the Company's Matching Contributions").

While this benefitted Qualcomm by lowering its contribution expenses, it harmed the Plan by (1) decreasing the amount of employer

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

3

contributions the Plan otherwise would have received and (2) depriving the Plan of the money the individual accounts would have earned had the expenses not been deducted from the accounts.  Compl. ¶¶ 15, 24.

| YEAR | CONTRIBUTIONS REDUCED BY FORFEITURES | EXPENSES DEFRAYED BY FORFEITURES | EXPENSES CHARGED TO PARTICIPANTS |
|------|------|------|------|
| 2019 | $1,060,000 | $0 | $493,667 |
| 2020 | $1,222,000 | $0 | $879,423 |
| 2021 | $1,222,072 | $0 | $954,269 |

*See* Compl. ¶¶ 21-23.

## ARGUMENT

### I.   IRS Regulation § 1.401-7(a) Does Not Apply to the Qualcomm Plan.

To understand why the IRS regulation upon which Defendants' entire motion is based has *never* required forfeitures in the Qualcomm Plan to be used to reduce employer contributions, "it is essential to recognize the difference between defined contribution plans and defined benefit plans." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). "In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole v. U.S. Bank N.A.,* 140 S. Ct. 1615, 1618 (2020).  By contrast, in a "defined contribution plan," the "employer's contribution is fixed and," at retirement, "the employee receives whatever level of benefits the amount contributed on his behalf will provide." *Hughes*, 525 U.S. at 439.

The Qualcomm Plan is "a profit sharing plan," which is a type of "defined contribution plan." *See* Exh. 1 (Plan Document, Art. I); *Miller v. Xerox Corp. Ret. Income Guarantee Plan*, 464 F.3d 871, 872 (9th Cir. 2006) (recognizing that a "Profit Sharing Plan [is] a defined contribution plan").

Defendants assert that a "controlling regulation" of the "Treasury Department" – "in place for decades" – prohibits using "forfeitures" to "increase the benefits any employee would otherwise receive" and, instead, "explicitly require[s]" that "any forfeitures '*must* be used as soon as possible *to reduce the employer's contributions under the plan*.'" MTD pp. 2-3, 5-6 (emphasis in original).  However, that regulation – 26 C.F.R. § 1.401-7(a) – and the Code provision it construes – 26 U.S.C. § 401(a)(8) – have never applied to profit sharing defined contribution plans.

Section 401(a) of the Internal Revenue Code sets forth the requirements for a "stock bonus, pension, *or* profit-sharing plan" to be a tax exempt "qualified trust."  26 U.S.C. § 401(a)(8) (emphasis added). When initially enacted in 1954, section 401(a) did not address the use of forfeitures in any of these three types of plans.  In 1962, the statute was amended to add subdivision (a)(8).  *See* Pub. L. No. 87-792, 76 Stat. 809, 810 (1962).  The new provision provided that "[a] trust forming part of a *pension plan* shall not constitute a qualified trust under this section unless the plan provides that forfeitures must not be applied to increase the benefits any employee would otherwise receive under the plan."  26 U.S.C. § 401(a)(8) (1962) (emphasis added).  The statute remained silent – and to this day is still silent – regarding the use of forfeitures in a "profit sharing plan."

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

In 1963, the IRS promulgated 26 C.F.R. § 1.401-7 to construe the 1962 amendment adding subdivision (a)(8) to Code section 401. *See* 28 Fed. Reg. 10115 (1963). As with the statutory provision it construes, that regulation does not purport to apply to a "profit-sharing plan." Instead, it is expressly limited to a "pension plan." *See* 26 C.F.R. § 1.401-7(a). The IRS regulations state that "[a] *pension plan* within the meaning of section 401(a)" – and as used in regulation "§ 1.401-7" – is a plan that provides for "the payment of *definitely determinable benefits*" (i.e., a defined benefit plan). 26 C.F.R. § 1.401-1(b)(1)(i) (emphasis added). A "profit-sharing plan," by contrast, is a plan that provides for "a definite predetermined formula for allocating the *contributions* to the plan" (i.e., a defined contribution plan). 26 C.F.R. § 1.401-1(b)(1)(ii) (emphasis added). It has always been clear that the requirements of "[s]ection 401(a)(8) of the Code and section 1.401-7 of the Income Tax Regulations" do "*not* extend to profit-sharing … plans." Rev. Rul. 71-313, 1971 WL 26693 (1971) (emphasis added).

In addition, with the passage of ERISA, the Code was amended to include a definition of "defined contribution plan" that expressly contemplates that "forfeitures of accounts of other participants … may be allocated to such participant's account." Pub. L. No. 93-406, 88 Stat. 829 at § 1015 (1974); 26 U.S.C. § 414(i). This provision would be irreconcilable with section 401(a)(8)'s ban on reallocating forfeitures to other participants' accounts if that provision applied to a "defined contribution plan." Confirming that section 401(a)(8) has no application to defined contribution plans, the statute was amended in 1986 to replace the term "pension plan" with the term "defined benefit plan." *See* Pub. L. No. 99-514, 100 Stat. 2085 at § 1119(a) (1986).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

6

Not only is the regulation cited by Defendants inapplicable to defined contribution plans, but its requirement that "forfeitures" in a "pension plan … must be used … to reduce employer contributions" was also rendered defunct by the passage of ERISA. This is because "ERISA added section 412 to the Code, which requires qualified defined benefit plans … to satisfy a minimum funding standard" and the Code "provisions that set forth minimum funding requirements" – 26 U.S.C. §§ 412, 430 431, and 433 – "do not allow the use of forfeitures to reduce required employer contributions to a defined benefit plan." 88 Fed. Reg. 12282, 12284 (2023). For that reason, the IRS clarified that § 1.401-7(a), among other regulations, "reflect the provisions of" the Code "*prior to* amendment by" ERISA. 26 C.F.R. § 1.401-0 (emphasis added); 42 Fed. Reg. 42320 (1977).

## II.   The *Proposed* IRS Regulation is Likewise of No Consequence Here.

To be sure, last year the IRS published a *proposed* regulation that, if promulgated, would for the first time regulate the use of forfeitures in defined contribution plans for the purpose of determining whether a plan is tax qualified. *See* 88 Fed. Reg. 12282 (2023). It would permit a defined contribution plan to remain qualified for favorable tax treatment where "forfeitures are used for one or more of the following purposes: (i) To pay plan administrative expenses; (ii) To reduce employer contributions under the plan; or (iii) To increase benefits in other participants' accounts in accordance with plan terms." 88 Fed. Reg. 12282, 12285 (2023). This *proposed* regulation is of no consequence here for multiple reasons.

First, a *proposed* regulation could not impact the construction of ERISA pursuant to 29 U.S.C. § 1144(d) – providing that ERISA shall not

be "construed to alter, amend, modify, invalidate, impair or supersede . . . any rule or regulation" – because it is not a "rule or regulation." *See Tedori v. United States*, 211 F.3d 488, 492 (9th Cir. 2000) ("[P]roposed regulations carry no more weight than a position advanced on brief"); *Estate of Howard v. Comm'r*, 910 F.2d 633, 636 (9th Cir. 1990) ("Proposed regulations do not have the force of law").

Second, even if the proposed regulation were to eventually become a "rule or regulation," it would only apply to plan years beginning on or after January 1, 2024. *See* 88 Fed. Reg. 12282, at 12285. Thus, it would have no application here because Plaintiff's claims challenge the Committee's use of forfeitures in years 2019 to 2021. *See* Compl. ¶¶ 20-23.

Third, even if the proposed regulation were applicable here, it would *not* require that forfeitures be used to reduce employer contributions rather than pay administrative expenses. Rather, the proposed regulation includes both as permissible uses, along with using the forfeitures to increase benefits. A such, complying with ERISA by using the forfeitures solely to defray plan expenses or increase benefits would not conflict with the proposed regulation.

Finally, the mere fact that compliance with ERISA's statutory mandates may preclude one of several otherwise permissible options for using forfeitures does not mean that it would "modify, impair or supersede" the proposed IRS regulation. *See Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 375 (1990) (rejecting argument that "application of ERISA's anti-alienation provision to preclude a remedy that would otherwise be available would 'modify, impair or supersede'" the Labor-Management Reporting and Disclosure Act,

notwithstanding that the LMRA authorized the remedy that ERISA precluded).   Regardless of whether compliance with ERISA prohibits using forfeitures to reduce employer contributions, the IRS would remain free to separately decide whether such use qualifies a plan for favorable tax treatment.   *Cf. In re McIntyre*, 222 F.3d 655, 660 (9th Cir. 2000) (holding that ERISA "cannot prevent the IRS from undertaking what would otherwise be a valid exercise of its . . . authority").

## III.   **ERISA Governs Decisions Involving the Management and Disposition of Plan Assets.**

Defendants do not dispute that the forfeited contributions at issue here are "Plan assets."[2]   Compl. ¶¶ 12, 17. Nevertheless, Defendants assert that, because ERISA does not regulate an employer's decisions concerning whether to "establish" an employee benefit plan or the "level of benefits" to offer in such a plan, ERISA could not require them to "use forfeited contributions for a purpose other than reducing the Company's contributions."   MTD p. 3.   That is not the law.   While an employer's decision regarding how to structure a plan may be immune from scrutiny, decisions concerning how to use plan assets in the course of administering the plan are subject to fiduciary restrictions.

When an employer "makes a decision regarding the form or structure of the Plan," the employer acts as "settlor," rather than a plan "fiduciary," and, as such, those decisions are not governed by ERISA. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).   This includes

---

[2] The Ninth Circuit has held that employer contributions "become plan assets" once "the employer pays the employer contributions over to the plan." *Cline v. Indus. Maint. Eng'g & Cont. Co.,* 200 F.3d 1223, 1234 (9th Cir. 2000).

plan design decisions "such as establishing, funding, amending, and terminating the trust." *Coulter v. Morgan Stanley & Co. Inc.,* 753 F.3d 361, 367 (2d Cir. 2014). However, "to the extent" an employer's decision involves "exercis[ing] *any* authority or control respecting management or disposition of [plan] assets," ERISA's "fiduciary" protections are triggered. 29 U.S.C. § 1002(21)(A) (emphasis added); *see also Tr. Of S. Cal. Bakery Drivers Security Fund v. Middleton*, 474 F.3d 642, 646 (9th Cir. 2007) (holding that where "plan assets" are at issue, "an entity that takes 'actions in regard to their management and disposition must be judged against ERISA's fiduciary standards'") (quoting *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 106 (1993)).

Here, Plaintiff does not challenge any decision by Defendants regarding how to structure the Plan, the level of benefits to offer in that Plan, or how to fund the Plan's trust. Instead, Plaintiff challenges Defendants' decisions regarding how to allocate forfeited contributions *after* they have been paid to the Plan and have become "plan assets." *See* Compl. ¶¶ 40, 41, 46.

While Defendants' decision to structure a plan that grants them "discretion" to decide how to use forfeitures was a plan design and thus settlor decision, Defendants' exercise of that "discretion" when deciding how to allocate forfeitures among the options set forth in the Plan was not. The law in this Circuit is clear: the implementation of a settlor decision is not itself a settlor decision. *See Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1342-43 (9th Cir. 1994) (holding that, although an employer's "*decision* to terminate" the plan was "a business decision" that could "not constitute a breach of fiduciary obligation," the "*implementation* of the decision," such as "choosing annuity providers to

satisfy plan liabilities," triggered "fiduciary" obligations) (emphasis in original); *see also Asner v. SAG-AFTRA Health Fund*, 557 F. Supp. 3d 1018, 1033 (C.D. Cal. 2021) ("Although decisions concerning plan design are normally 'settlor' in nature, and therefore not subject to ERISA fiduciary duties, the implementation of decisions concerning plan design can be subject to ERISA fiduciary duty.").

Thus, while Defendants were free to decide upon the terms of the Plan, Defendants were subject to fiduciary restrictions when deciding how to use "plan assets" in the course of administering the Plan.  *See Akers v. Palmer*, 71 F.3d 226, 230 (6th Cir. 1995) (holding that a company is "subject to fiduciary restrictions when managing a plan according to its terms, but not when it decides what those terms are to be"); *see also Thondukolam v. Corteva, Inc*, 2020 WL 1984303, at *3 (N.D. Cal. Apr. 27, 2020) (holding that, although an alleged "failure to fund the Plan . . . does not trigger fiduciary obligations," the "decisions regarding fund allocation" for "contributions" already in the Plan do).    Indeed, Defendants do not actually dispute that they were acting in a "fiduciary" capacity when deciding how to use the forfeitures in the Plan. Accordingly, that decision is governed by ERISA.

## IV.   **Plaintiff Adequately Alleges a Breach of Fiduciary Duties.**

ERISA commands that fiduciaries discharge their duties "*solely* in the interest of the participants and beneficiaries" and for "the *exclusive* purpose" of providing them benefits and "*defraying*" their "*expenses*."  29 U.S.C. § 1104(a)(1)(A) (emphasis added).  ERISA also "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S.

409, 419 (2014) (citation omitted); 29 U.S.C. § 1104(a)(1)(B).  These twin statutory duties together compel fiduciaries "to act in the best interests of the plan participants and beneficiaries."  *Barker v. Am. Mobil Power Corp.,* 64 F.3d 1397, 1403 (9th Cir. 1995).

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages."  *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).  Here, Plaintiff alleges that Defendants, while serving as fiduciaries, failed to act in the participants' best interests, and thereby damaged the Plan and its participants, by declining to use any forfeitures to defray the expenses charged to participant accounts and instead using all of these Plan assets to reduce Qualcomm's contributions.  *See* Compl. ¶¶ 8, 19-24, 32-34, 38-41.

Defendants do *not* dispute that they were "fiduciaries" and that the Plan and its participants were harmed by their refusal to use any forfeitures to defray the expenses charged to participant accounts. Because Defendants make no argument as to these elements of the claim, they cannot do so for the first time in reply.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *Alexander v. City of San Diego*, 2011 WL 6734841, at *1–2 (S.D. Cal. Dec. 21, 2011).

Defendants argue *solely* that, "as a matter of law," there can be no breach of "fiduciary duties" because they complied with IRS regulations and the terms of the Plan.  MTD pp. 2-3, 5-8.  But Plaintiff need not show that Defendants violated a tax regulation or a Plan term to state a claim for breach of fiduciary duties.

## A. Compliance With the Existing and Proposed IRS Regulations is Not a Defense to ERISA Claims.

Defendants' purported compliance with 26 C.F.R. § 1.401-7(a) and the *proposed* IRS regulation is not a defense to Plaintiff's ERISA claims. Aside from being inapplicable to this case (as shown above), the existing and proposed IRS regulations do not purport to govern compliance with ERISA. They merely address limitations on permissible uses of forfeitures to remain tax exempt under section 401(a) of the Internal Revenue Code. *See* 88 Fed. Reg. 12282 (2023). But section 401(a) of the Internal Revenue Code has no application to determining compliance with ERISA. *See McDaniel v. Chevron Corp.,* 203 F.3d 1099, 1117-18 (9th Cir. 2000) (rejecting the notion that "ERISA incorporates" IRC § 401(a)); *Reklau v. Merchants Nat. Corp.,* 808 F.2d 628, 631 (7th Cir. 1986) (refusing "to read § 401(a) of the I.R.C. as applicable to ERISA").

Because the existing and proposed IRS regulations do not apply to ERISA, Defendants purported compliance with them is of no legal consequence. *Accord Esden v. Bank of Bos*., 229 F.3d 154, 176 (2d Cir. 2000) (holding that "[a] favorable determination letter [from the IRS] indicates only that an employee retirement plan qualifies for favorable tax treatment by meeting the formal requirements of I.R.C. § 401(a). … [T]he determination letters do not bar plan participants from asserting their rights under ERISA.").

## B. Defendants Cannot Hide Behind the Plan Terms.

Defendants assert that "fiduciary duties" under ERISA could not have required them to "depart[] from the language of the Plan," which permits using forfeitures to reduce employer contributions. MTD p. 3. According to Defendants, absent an allegation that "the Plan terms

required forfeitures to be used to reduce plan expenses," there could be no fiduciary breach by declining to use the assets for such purpose.  MTD p. 8.  Defendants misunderstand the law.

Fiduciaries must act "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of this subchapter*."  29 U.S.C. § 1104(a)(1)(D) (emphasis added).  As the Supreme Court explained in *Fifth Third Bankcorp v. Dudenhoeffer,* "[t]his provision makes clear that" ERISA's fiduciary duties "trump[] the instructions of a plan document[.]"  573 U.S. 409, 421 (2014); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,* 472 U.S. 559, 568 (1985) (holding that "trust documents cannot excuse trustees from their duties under ERISA, and that trust documents must generally be construed in light of ERISA's policies").

*Fifth Third* concerned the duty of prudence as applied to an employee stock ownership plan (ESOP), "a type of pension plan that invests primarily in the stock of the company that employs the plan participants."  573 U.S. at 412.  The plan required "the ESOP's funds to be invested primarily in shares of common stock of Fifth Third."  *Id.* There was no question that this term was lawful.  In fact, the Supreme Court acknowledged that "ESOP plans instruct their fiduciaries to invest in company stock, and § 1104(a)(1)(D) requires fiduciaries to follow plan documents so long as they do not conflict with ERISA."  *Id.* at 423–24. And the Court recognized that "in many cases an ESOP fiduciary who fears that continuing to invest in company stock may be imprudent finds himself between a rock and a hard place: If he keeps investing and the stock goes down he may be sued for acting imprudently in violation of §

1104(a)(1)(B), but if he stops investing and the stock goes up he may be sued for disobeying the plan documents in violation of § 1104(a)(1)(D)." *Id.* at 424. Nevertheless, a unanimous Supreme Court held "that the duty of prudence trumps the instructions of a plan document, such as an instruction to invest exclusively in employer stock even if financial goals demand the contrary." *Id.* at 421.

*Fifth Third* forecloses Defendants' argument that mere compliance with the Plan's terms excuses their failure to apply forfeitures to defray expenses. Regardless of whether the Plan document required using forfeitures for such purpose, ERISA independently required Defendants to "discharge" their "duties with respect to the plan solely in the interest of the participants and their beneficiaries," which includes "defraying" the "expenses of administering the plan." 29 U.S.C. § 1104(a)(1). Defendants "cannot hide behind plan terms" to immunize from scrutiny their decision to instead use the forfeitures for their own benefit because "plan terms cannot override fiduciary duties." *Doe v. United Behavioral Health,* 523 F. Supp. 3d 1119, 1127 (N.D. Cal. 2021) (finding that, notwithstanding that the plan explicitly excluded coverage for the type of treatment at issue, the administrator's decision to deny coverage was still subject to scrutiny because "plan terms cannot override fiduciary duties"); *see also Feinberg v. T. Rowe Price Grp., Inc.*, 2021 WL 488631, at *6 (D. Md. Feb. 10, 2021) (holding that "a fiduciary has an obligation to diverge from plan document instructions where necessary to protect the interests of plan participants").

Because Plaintiff has alleged that Defendants failed to use the forfeitures in the best interest of the participants and thereby caused damages to the Plan and its participants, *see* Compl. ¶¶ 19-20, 24, 33, 39,

40, Plaintiff has stated a claim for breach of fiduciary duties.

And, in any event, Qualcomm's use of forfeitures in 2019 to reduce over $1 million in "delinquent" employer matching contributions *did* violate the Plan document. *See* Compl. ¶ 21; Exh. 2 (Form 5500 for 2019 at Note 1 to Financial Statements ("During 2019, employer *delinquent* contributions were reduced by nonvested forfeitures of $1,060,000." (emphasis added)). The Plan document does not authorize using forfeitures to reduce *past due* employer contributions. It only authorizes using forfeitures "to reduce" those "Employer Contributions *next payable* under the Plan." *See* Exh. 1 (Plan Document ¶ 7.3) (emphasis added).

## V.  **Plaintiff States a Claim for Unlawful Inurement.**

ERISA § 403(c)(1) provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Plaintiff alleges that this provision was violated when Defendants elected to use forfeited contributions in the Plan "as a substitute for" Qualcomm's "own future contributions to the Plan, thereby saving" Qualcomm "millions of dollars in contribution expenses." Compl. ¶ 46; *see also* Compl. ¶¶ 19-23.

Defendants argue, incorrectly, that the "fact that Qualcomm may end up contributing less of its own money to the Plan because of how the forfeitures are used is irrelevant" so long as "the forfeited funds remain in the Plan." MTD pp. 7, 9.

### A.  **Plan Assets Cannot Forgive Employer Debts.**

The anti-inurement rule is violated where, as here, plan assets are used to forgive an employer's debts to the plan. For example, in *Holland*

*v. Arch Coal, Inc.*, 947 F.3d 812 (D.C. Cir. 2020), a statute required certain coal operators to fund an ERISA welfare benefit plan by, among other methods, providing security in the form of a bond, letter of credit, or cash escrow in an amount equal to a portion of their retirees' future health care costs.  Following a series of corporate transactions, the defendant's security obligation was satisfied with a letter of credit.  But after the plan drew down the letter of credit, it sued to compel the defendant to provide additional security.  The defendant argued that the proceeds of the letter of credit should be used either to (1) satisfy the requirement that it provide additional security to the plan, or (2) offset its obligation to make contributions to the plan.

The D.C. Circuit rejected this contention as prohibited by ERISA's anti-inurement rule.  The Court explained that using the proceeds of the letter of credit "in either case" would "serv[e] to reduce" the defendant's debt "obligations" to the plan.  *Id.* at 821.  Using the proceeds in this way, the Court held, would "run afoul of the clear injunction in ERISA that the 'assets of a plan shall never inure to the benefit of any employer.'"  *Id.* (quoting 29 U.S.C. § 1103(c)(1)).  *Holland* thus stands for the principle that the anti-inurement rule prohibits plan assets from being used to satisfy any part of an employer's debt obligations to the plan.

*Holland* is not alone.  Many other courts have held that plan assets impermissibly inure to the benefit of the employer when used as a credit against the employer's contribution obligations to a plan.  *See Chao v. Malkani*, 452 F.3d 290, 298 (4th Cir. 2006) (holding that the "requested offset" of excess contributions "would violate ERISA's anti-inurement provision, because Plan assets would benefit" the employer); *Brown v. Health Care & Ret. Corp. of Am.*, 25 F.3d 90, 93 (2d Cir. 1994) (holding

that a "set off" of "amounts overpaid against monies yet to be paid" is "equally in derogation of the principle that funds of an ERISA plan must never inure to the benefit of the employer"); *Bd. of Trs. v. Grand River Navigation Co., Inc.,* 2021 WL 1215060, at *9 (D. Md. Mar. 30, 2021) ("ERISA's anti-inurement provision not only prohibits the transfer of plan assets to an employer, but also forbids the use of plan assets in any way that would benefit a contributing employer, including giving an employer a credit for past overpayments."); *Operating Eng'rs Loc. 324 Health Care Plan v. Dalessandro Cont. Grp., LLC,* 2012 WL 831758, at *5 (E.D. Mich. Mar. 12, 2012) ("To give Defendant an offset or credit for its overpayments would go against the plain language of 29 U.S.C. § 1103(c)(1), which states that 'the assets of a plan shall never inure to the benefit of any employer.'").

In *Chao v. Anderson*, 2007 WL 1448705 (E.D. Va. May 9, 2007), for example, the defendant employers argued that their contribution debt to the plan should be offset "by applying the balance of the Forfeiture Account to the Plan's shortfall." *Id.* at *2. The Court disagreed, reasoning that "allowing such an offset would violate ERISA's anti-inurement provision that 'the assets of a Plan shall never inure to the benefit of any employer.' 29 U.S.C. § 1103(c)(1)." *Id.* The Court rejected the defendants' claim that "they do not request any benefit, but simply ask for the assets in the Forfeiture Account to be distributed to the rightful employees." *Id.* "Such a distribution," the Court held, "would still inure to the benefit of" the defendants, "albeit in the form of debt-relief." *Id.* "Such a benefit is clearly within the scope of the statute's text, and thus, would violate the anti-inurement provision." *Id.*

The cases cited by Defendants are not to the contrary.  In *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), the employer used the surplus assets in an overfunded defined benefit plan to fund a new noncontributory benefits structure.  The Court held that the employer "did not act impermissibly by using surplus assets from the contributory structure to add the noncontributory structure to the Plan."  *Id.* at 442. Critically, as the Court expressly acknowledged, "at all times" the employer had "satisfied its continuing obligation under the provisions of the Plan and ERISA to assure that the Plan was adequately funded." *Id.* Thus, the Court emphasized that the employer had *not* used plan assets to satisfy its debt obligations to the plan.  Rather, the employer used surplus assets to provide *additional* benefits not previously required.

Likewise, in *Spink v. Lockheed Corp.*, 125 F.3d 1257 (9th Cir. 1997), the employer amended a defined benefit plan to offer new "increased retirement benefits" that "were paid out of the Plan's surplus assets." *Id.* at 1260.  There was no contention that the employer had used plan assets to forgive its debts to the plan.

Same with *Holliday v. Xerox Corp.*, 732 F.2d 548 (6th Cir. 1984). There, the employer established an additional benefit program to ensure that employees' annual pension payments were brought up to at least a "minimum pension floor."  *Id.* at 549.  To determine the "increase" in employer contributions necessary to guarantee a "minimum pension floor," the "annuity payments" under the existing retirement plans were "subtracted as a setoff" from the "minimum pension floor."  *Id.* at 549, 551.  The annuity payments were not used to forgive the employer's debt, but to calculate the "net increase" in contributions necessary to fund an additional benefit.  *Id.* at 551.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

19

**B.** **Forfeitures Were Used to Forgive Qualcomm's Debts to the Plan.**

The Plan required Qualcomm to make "Matching Contributions" to the Plan "in the form of cash" at specified matching rates, ranging from 10% to 100% of the participant contributions. *See* Exh. 1 (Plan Document ¶ 4.4). This provision guaranteed that the Plan would receive a fixed amount of "new money" from Qualcomm each year. When Defendants allocated forfeitures to reduce Qualcomm's employer contributions in years 2019 to 2021, "old money" already in the Plan was recycled and substituted for "new money" that was supposed to come into the Plan. The upshot is that in each of those years, Qualcomm contributed less in "new money" than it otherwise would have had the forfeitures been allocated elsewhere. This debt forgiveness constituted a direct and greater-than-incidental benefit to Qualcomm in violation of ERISA's anti-inurement rule. *See Chao*, 2007 WL 1448705, at *2 (holding that the anti-inurement rule prohibits forfeitures from being used to offset employer debts to the plan).

**C.** **Qualcomm Cannot Satisfy the Requirements for a Refund of the Forfeited Contributions.**

Qualcomm also asserts that amounts contributed to participants who separate employment before vesting were, "in hindsight," not "owe[d] them" and, therefore, "[i]t would be reasonable for those funds to be returned to Qualcomm as mistakenly paid" under "29 U.S.C. § 1103(c)(d)(A)." MTD 7. But the Ninth Circuit has rejected Qualcomm's argument. As the Ninth Circuit explained, incorrect "projections" about the "future" when making employer contributions is not akin to "clerical or arithmetical mistakes" and, as such, "cannot constitute a mistake of

fact" justifying a refund "under section [29 U.S.C. § 1103(c)(d)(A)]." *Brit. Motor Car Distributors, Ltd. v. San Francisco Auto. Indus. Welfare Fund,* 882 F.2d 371, 376 (9th Cir. 1989).

Qualcomm's attempt to equate itself with a customer who is entitled to be "credited back the cost" for purchasing "items" if it later "turns out" such merchandise is "not in stock" is likewise misplaced. MTD p. 7. This inapposite analogy disregards the unique protections ERISA imposes on monies deposited with a plan, which, absent limited exceptions not applicable here, "shall never inure to the benefit of any employer." 29 U.S.C. § 1103(c). Unlike money deposited by a customer, "Section 1103(c) reflects a policy of limiting an employer's access to monies once he has paid them into a fund for the benefit of employees, even if the payment was made by mistake." *Carriers Container Council, Inc. v. Mobile S.S. Ass'n Inc.,* 896 F.2d 1330, 1340 (11th Cir. 1990). Moreover, unlike a customer, Qualcomm, as the Plan administrator, had a fiduciary duty to "to act in the best interests of the plan participants and beneficiaries," *not itself*, with respect to its "management and disposition of" the funds at issue here. *See Barker v. Am. Mobil Power Corp.,* 64 F.3d 1397, 1403 (9th Cir. 1995); 29 U.S.C. § 1002(21)(A).

## VI.  **Plaintiff States a Claim for Prohibited Transactions.**

### A.    **Plaintiff Alleges a Transaction That Plausibly Violates § 1106(a).**

ERISA prohibits plan fiduciaries from causing the plan to engage in "a transaction" in which property is "exchange[d]" between the plan and a "party in interest" or "assets of the plan" are "use[d] by or for the benefit of a party in interest." 29 U.S.C. § 1106(a)(1)(A) & (D). Plaintiff alleges that "[b]y electing to use forfeited funds in the Plan as a substitute

for" Qualcomm's required "contributions to the Plan," Defendants, acting as fiduciaries, "caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or a use of Plan assets by or for the benefit of" Qualcomm.  Compl. ¶¶ 50, 51.

Defendants do not dispute that (1) Qualcomm, as the "employer" of Plan participants, is a "party in interest," *see* 29 U.S.C. § 1002(14)(C); (2) the forfeitures are "Plan assets," and (3) Defendants were acting as "fiduciaries" when deciding how to use the forfeitures in the Plan. Defendants argue only that the "use of Plan assets" to offset Qualcomm's contribution debt "does not qualify as a 'transaction'" because the "forfeitures stay in the Plan." MTD pp. 8-9.

But, contrary to Defendants' assertion, to qualify as a "prohibited transaction" it is not necessary for assets to actually leave a plan.  Rather, the Supreme Court has recognized that a fiduciary who fails to "assur[e] full and prompt *collection of* contributions" – as Defendants allegedly did here by impermissibly using forfeitures as a substitute for contributions – may "be found to have violated" ERISA's prohibited transactions. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,* 472 U.S. 559, 572-74 (1985) (emphasis added).

Moreover, the Supreme Court has found a nearly identical arrangement to be a "transaction" prohibited by the Internal Revenue Code's parallel provision.  Like 29 U.S.C. § 1106(a)(1)(A), 26 U.S.C. § 4975(c)(1)(A) prohibits the "sale or exchange" of property "between a plan and a disqualified person."  The issue in *Commissioner v. Keystone Consolidated Industries, Inc.*, 508 U.S. 152 (1993), was whether this provision was violated when the plan received contributions of real

property from the employer, a "disqualified person," in satisfaction of the employer's contribution obligations to the plan.  The Supreme Court held that "[t]he contribution of property in satisfaction of a funding obligation is at least both an indirect type of sale and a form of exchange, since the property is exchanged for diminution of the employer's funding obligation." *Id.* at 159.

So too here.  Defendants' use of forfeitures to reduce Qualcomm's contributions is a form of "exchange," since the forfeitures are exchanged for diminution of Qualcomm's funding obligation.  Indeed, the Department of Labor has taken the position in briefing that the "use of" a plan's "forfeiture account funds to reduce the amount [an employer] had to pay for its declared matching obligation were prohibited transactions, in violation of 29 U.S.C. § 1106(a)(1)(D)" because it "caused a direct financial benefit to" the employer.  *See* Exh. 5 (DOL Brief pp. 11, 23).

### B.  Plaintiff Alleges Self-Dealing That Plausibly Violates § 1106(b)(1).

ERISA also prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."  29 U.S.C. § 1106(b)(1).  Plaintiff alleges that Qualcomm violated this prohibition when it used forfeitures "as a substitute for future employer contributions to the Plan, thereby saving the Company millions of dollars in contribution expenses."  Compl. ¶ 56.  Defendants argue that this is not a "transaction."  But the statute does not require a "transaction."

Subdivision (b) of 29 U.S.C. § 1106, which prohibits self-dealing, is "broader in scope" than subdivision (a).  *Int'l Bhd. of Painters & Allied Trades Union and Indus. Pension Fund v. Duval*, 925 F. Supp. 815, 825 (D.D.C. 1996).  It provides that "[a] fiduciary with respect to a plan shall

not – *deal with* the assets of the plan in his own interest or for his own account," and makes no mention of a "transaction." 29 U.S.C. § 1106(b)(1) (emphasis added).    Because "§ 1106(b)(1) does not use the word 'transaction,'" an "affirmative transaction" is not "required" to state a claim.[3] *United Food & Com. Workers Int'l Union-Indus. Pension Fund v. Bank of N.Y. Mellon*, 2014 WL 4627904, at *6 (N.D. Ill. Sept. 16, 2014).

Here, Qualcomm does not dispute that the forfeitures were "assets of the Plan."    Nor does Qualcomm dispute that, while acting as a "fiduciary," it "dealt with" the forfeitures in its own interest or for its own account.  Accordingly, Plaintiff has stated a claim for self dealing.

## VII. <u>Plaintiff Alleges a Plausible Breach of the Duty to Monitor.</u>

Qualcomm has the power to appoint and remove the Committee. *See* Exh. 1 (Plan Document ¶ 12.5).  As such, Qualcomm has a duty to monitor the Committee. *See Solis v. Webb*, 931 F. Supp. 2d 936, 953 (N.D. Cal. 2012) ("Implicit within the duty to select and retain fiduciaries is a duty to *monitor* their performance.") (emphasis in original).    This required Qualcomm "to ensure that" the Committee complied "with the terms of the plan *and statutory standards*." 29 C.F.R. § 2509.75-8, at FR–17 (emphasis added).

Plaintiff alleges that "Qualcomm breached its fiduciary monitoring standard with respect to the Committee by, among other things, failing to monitor the Committee's management and use of forfeited funds in the

---

[3] Although "the statutory heading uses the word 'transactions' … the title of a statute cannot limit the plain meaning of the text." *United Food*, 2014 WL 4627904, at *6; *see also Sec'y of Labor v. Seward Ship's Drydock, Inc.*, 937 F.3d 1301, 1309 (9th Cir. 2019) (same).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plan and by failing to take steps to ensure that the Committee was discharging its duties with respect to Plan assets for the sole benefit of Plan participants and beneficiaries." Compl. ¶ 64. Defendants argue that this claim should be dismissed because it "is derivative of his other claims," which "fail" to state a claim. MTD p. 10.

As Plaintiff has demonstrated, however, Plaintiff has adequately alleged that Defendants committed numerous plausible violations of ERISA when allocating forfeitures to reduce Qualcomm's contributions to the Plan rather than to defray the Plan's expenses charged to participants. Accordingly, Plaintiff has also adequately alleged a plausible breach of Qualcomm's duty to monitor the Committee.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in its entirety.

DATED:  February 5, 2024                **HAYES PAWLENKO LLP**
                                        By:/s/Matthew B. Hayes
                                        Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of California using the CM/ECF system on February 5, 2024.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: February 5, 2024                    /s/Matthew B. Hayes

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS