1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO PEREZ-CRUET, | ) Case No.: 23-cv-1890-BEN (MMP) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| QUALCOMM INCORPORATED, et al., | ) **ORDER DENYING MOTION TO** |
| Defendants. | ) **DISMISS** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## I.   <u>INTRODUCTION</u>

Plaintiff is an ex-employee of Qualcomm, Inc., and a current participant in the Qualcomm defined contribution employee pension plan.  Defendants manage the pension plan.  Plaintiff alleges that the Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., by choosing to put forfeited Plan contributions towards current participants' accounts rather than defraying administrative expenses of the Plan.  While all agree that the written terms of the Plan

-1-

permit the Defendants to make either choice, Plaintiff alleges that overarching principles of ERISA and the Defendants' fiduciary duties under ERISA leave only one choice: defray the administrative costs of the Plan.

Defendants move to dismiss six of the seven claims for relief.  The seventh claim for relief alleges that Defendants failed to provide a copy of Plan documents when requested by Plaintiff.   Defendants do not move to dismiss the seventh claim.  Upon review, the motion to dismiss is denied.

## II.    **BACKGROUND**

According to the Complaint, Qualcomm provides a defined contribution pension plan for its employees.[1]  The Plan is funded by a combination of voluntary wage withholdings from employee participants and Qualcomm matching contributions.  Both of these are deposited into the Plan's trust fund.  The Plan provides an individual account for each participant.  The Plan's administrative expenses are paid through a direct charge to each participant's account on a quarterly basis.  There is a vesting period for the employer's matching contributions.  After one year of employment an employee has a vested interest in 50% of the employer's matching contributions.  After two years of employment, an employee become fully vested in the employer's matching contributions.

When an employee leaves Qualcomm before the end of the vesting period, the ex-employee forfeits the balance of nonvested Qualcomm matching contributions in his or her individual account.  According to the Complaint, in the years 2019, 2020, and 2021, Defendants used forfeited (nonvested) matching contributions to pay for new Qualcomm contributions for employees.  In 2021, for example, $1,222,072 of previously forfeited nonvested contributions were used to make Qualcomm matching contributions for current employees.  Although under the terms of the Plan, Defendants could have used the forfeited contributions to defray the 2021 pension plan administrative expenses of

---

[1] For the purposes of a motion to dismiss, the Court assumes plausible facts pleaded in the Complaint are true.  *Mazarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court is not making factual findings.

23-cv-1890-BEN (MMP)

1    $954,269, the Defendants did not make that choice.

2    **III.   LEGAL STANDARD**

3         Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed

4    when a plaintiff's allegations fail to set forth a plausible set of facts which, if true,

5    would entitle the complainant to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

6    (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be

7    facially plausible to survive a motion to dismiss).  The pleadings must raise the right to

8    relief beyond the speculative level; a plaintiff must provide "more than labels and

9    conclusions, and a formulaic recitation of the elements of a cause of action will not do."

10   *Twombly*, 550 U.S. at 555 (citation omitted).[2]

11

12   [2]     Generally, evaluation of a Rule 12(b)(6) motion does not involve consideration of

13   material outside the complaint (*e.g.*, facts presented in briefs, affidavits or discovery
     materials).  Phillips & Stevenson, *California Practice Guide: Federal Civil Procedure

14   Before Trial* § 9:211 (The Rutter Group April 2023).  Thus, in evaluating a Rule
     12(b)(6) motion, review is ordinarily limited to the contents of the complaint.  *Van

15   Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach
     Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

16        There are two exceptions to this rule: the incorporation-by-reference doctrine and
     judicial notice under Federal Rule of Evidence 201.  Each mechanism permits district

17   courts to consider materials outside the complaint on a Rule 12(b)(6) motion.
     Rule 201 permits a court to take judicial notice of an adjudicative fact if it is "not

18   subject to reasonable dispute."  Fed. R. Evid. 201(b).  On the other hand,
     "incorporation-by-reference is a judicially created doctrine that treats certain documents

19   as though they are part of the complaint itself.  The doctrine prevents plaintiffs from
     selecting only portions of documents that support their claims, while omitting portions

20   of those very documents that weaken—or doom—their claims." *Khoja v. Orezigen

21   Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (9th Cir. 2018).  A court may incorporate a
     document by reference if the complaint refers extensively to the document or the

22   document forms the basis for the plaintiff's claim.  *Id*. (citations omitted).

23        Plaintiff asks the Court to take judicial notice of exhibits under one or both of the
     doctrines discussed above.  *See* Dkt 18.  Defendants do not object.  Judicial notice is

24   granted as to Exhibit 1 (the Plan), Exhibits 2, 3, and 4 (IRS Form 5500 filed by the Plan

25   for the years 2019, 2020, and 2021) as supplemented by the entire Form 5500
     incorporated by reference to complete Exhibits 2, 3, and 4, and Exhibit 5 Secretary of

26   Labor's brief filed in *Acosta v. Allen*, No. 17cv784 CHB (W.D. Ky.).

27

28

                                                  -3-

The plausibility of ERISA claims of fiduciary malfeasance and other breaches of fiduciary duty often depend on context. The Supreme Court has observed that for a Rule 12(b)(6) motion context is important for sifting out implausible claims. "Because the content of the [ERISA] duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts . . . the appropriate inquiry will necessarily be context specific." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (citations omitted). The important task on a motion to dismiss of dividing the "plausible sheep" of claims for relief from the "meritless goats" relies on context-sensitive scrutiny. *Id*. ("That important task can be better accomplished through careful, context-sensitive scrutiny of a complaint's allegations.").

## IV.   **DISCUSSION**

ERISA is designed to "protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." Title 29 U.S.C. § 1001(b). To this end, Congress has mandated that private pension plan assets are to be held in trust for the exclusive benefit of plan participants and beneficiaries. *Id*. § 1103(a); § 1102(a)(1). Moreover, the authority to administer the plan must be vested in one or more named fiduciaries. *Id*. § 1102(a)(1). The fiduciary need not be an independent party; the employer or plan sponsor may appoint its own "officer, employee, agent, or other representative" to serve in a fiduciary capacity. *Id*. § 1108(c)(3). "ERISA requires that fiduciaries discharge their duties in accordance with the terms of the plan, except when such terms conflict with Titles I or IV of ERISA." *Id.; see also Bennett v. Conrail Matched Sav. Plan Admin. Comm*., 168 F.3d 671, 677 (3d Cir. 1999) ("ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA."). The Qualcomm Plan provides:

> Forfeitures shall be used at the discretion of the Company to reduce the Employer Contributions next payable under the Plan or applied to Plan administrative expenses.

-4-

Plaintiff's Motion to Take Judicial Notice, Dkt 18-1, Exhibit 1, ¶ 7.3(b).

Claim One.

Section 1104(a)(1) of ERISA imposes three general duties on pension plan fiduciaries. One of the duties of a plan fiduciary is to "act 'solely in the interest of the participants' and for the 'exclusive purpose' of providing benefits to those participants." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1093–94 (9th Cir. 2004). In Claim One, Plaintiff alleges that Defendant Qualcomm breached this duty by choosing to use forfeited funds to reduce its own future contributions to the Plan instead of reducing the administrative expenses which are borne by participants. In this way, it is alleged, Qualcomm chose to put its own interests ahead of the interests of the Plan participants by choosing not to act for the exclusive purpose of benefiting Plan participants.

Plaintiff has made out a plausible claim that Defendants violated § 1104. Though there is no case on point, the Supreme Court says Rule 12(b)(6) requires a context-sensitive inquiry. What is the context here? From reviewing IRS Form 5500 one can see that this Plan was in sound financial condition with eight billion dollars in assets and 21,684 participants at the end of the 2021 plan year. Back-of-the-envelope math indicates that each participant ended the year with an average account balance of $369,000. Plan investment income during the year totaled $1,580,845,162. Administrative expenses totaled $954,269.

Dividing total administrative expenses among all participants suggests that a participant like plaintiff incurred an average administrative expense of $44 per year. Had Defendants used the $1,222,072 of forfeited nonvested contributions from 2021 toward paying Plan administrative expenses, all Plan participants would have benefited by incurring no administrative expense charge to their accounts. Instead, all Plan participants had to pay for administrative expenses that could have been reduced to zero had the Defendants chosen to use forfeited contributions in that way. The Ninth Circuit

has recognized that a fiduciary "must 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.'" *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 837 (9th Cir 2018) (citing § 1104(a)(1)); *but see Collins v. Pension & Ins. Comm. of So. Cal. Rock Prods. & Ready Mixed Concrete Ass'n*, 144 F.3d 1279, 1282 (9th Cir. 1998) (per curiam)  ("The duty to act in accordance with the plan document 'does not ... require a fiduciary to resolve every issue of interpretation in favor of plan beneficiaries.'").  "Accordingly," says *Santomenno*, "the fiduciary cannot 'deal with the assets of the plan in his own interest or for his own account . . . .'" *Id.*  Furthermore, *Santomenno* says that when it comes to administrative expenses, "[t]he employer has the express duty under § 1104(a)(1)(A)(ii) of 'defraying reasonable expenses of administering the plan.'" *Id*. at 838.  Plaintiff alleges that Defendants dealt with assets of the Plan for Qualcomm's own account.  And Defendants did not defray the expenses of administering the Plan.  Thus, Plaintiff plausibly claims that the Defendants breached their fiduciary duty to Plan participants by making a choice that put the employer's interests above the interests of the Plan participants.  Therefore, the motion to dismiss Claim One is denied.

     Claim Two.

     Section 1104(a)(1)(B) of ERISA also imposes a fiduciary duty of prudence.  Like the first claim, Claim Two asserts Defendants breached the ERISA duty of prudence. Defendants argue that they were following the Plan instructions.  ERISA "makes clear that the duty of prudence trumps the instructions of a plan document, such as an instruction to invest exclusively in employer stock even if financial goals demand the contrary." *Dudenhoeffer*, 573 U.S. at 421.  Consequently, it is plausible that Defendants could have breached the duty of prudence even while complying with the bare terms of paragraph 7.3 of the Plan.  *See* Plaintiff's Motion to Take Judicial Notice, Dkt 18-1, Exhibit 1, ¶ 7.3(b) (providing a choice for forfeited contributions without mentioning fiduciary duty); *Dudenhoeffer*, 573 U.S. at 421 ("This rule would make little sense if, as

-6-

1    petitioners argue, the duty of prudence is defined by the aims of the particular plan as

2    set out in the plan documents, since in that case the duty of prudence could never

3    conflict with a plan document.").  For example, a profit sharing-plan that instructs the

4    plan trustee to continue acquiring company stock at a time when the company is on the

5    verge of bankruptcy may violate the duty of prudence while complying with the bare

6    terms of the plan.

7         Defendants may have complied with the Plan's terms which permit a choice.

8    However, in this context, the Defendants' choice allegedly harmed the participants by

9    letting the administrative expense charge fall on the participants rather than the

10   employer.  Thus, by allegedly acting against the best interests of the Plan participants,

11   Plaintiff has articulated a plausible claim of a breach of the duty of prudence by

12   Defendants.  The motion to dismiss Claim Two is denied.

13        <u>Claim Three</u>.

14        This claim asserts a different theory based on the same facts.  Section 1103(c)(1)

15   of ERISA articulates what is known as the anti-inurement principle.   Section 1103(c)(1)

16   states, "*the assets* of a pension plan shall never inure to the benefit of any employer and

17   shall be held for the exclusive purposes of providing benefits to the participants in the

18   plan and their beneficiaries and defraying reasonable expenses of administering the

19   plan." (Emphasis added).  For Claim Three, Plaintiff asserts that Defendants violated

20   this provision by utilizing forfeited contributions as a substitute for the company's own

21   future contributions.  Plaintiff contends that nonvested forfeited contributions are to be

22   considered plan "assets."  Plaintiff has not cited a case and this Court has not found one.

23   ERISA does not define "assets."  Consequently, whether nonvested forfeited

24   contributions fall within the definition of "assets" is still an open question.

25        The anti-inurement principle is not absolute.  The principle is subject to

26   exceptions.  Assuming for the sake of argument that forfeited contributions are to be

27   considered as plan "assets" (which is a reasonable assumption), ERISA provides for a

28   number of ways assets may be used to benefit the employer without violating the anti-

inurement principle.  At least one court has reasoned, "[t]he language of ERISA stating that 'the assets of a plan shall never inure to the benefit of any employer' cannot be read as a prohibition against any decisions of an employer with respect to a pension plan which have the obvious primary purpose and effect of benefitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective."  *Holliday v. Xerox Corp.*, 732 F.2d 548, 551–52 (6th Cir. 1984); *see also Dumac Forestry Servs., Inc. v. Int'l Bhd. of Elec. Workers*, 814 F.2d 79, 81 (2d Cir. 1987) (§ 1103(c)'s "sweeping prohibition is tempered by a number of limited exceptions.").

Most important here, ERISA specifically provides an exception to its sweeping anti-inurement rule for contributions made mistakenly.  Section 1103(c)(2)(A) provides, "[i]n the case of a contribution ... (ii) made by an employer to a multiemployer plan by a mistake of fact or law ..., paragraph (1) shall not prohibit the return of such contribution . . . ."  The Second Circuit explained, "[b]y eliminating some of the prior restrictions on recovery by employers of mistaken contributions, the amendments made the statute more permissive; mistakes of law were added as a basis for refunds, and the former one-year refund limitation period for overpayments was eliminated."  *Dumac Forestry,* 814 F.2d at 81.  In *Dumac Forestry*, plan trustees returned to the employer mistakenly high contributions.  *Id*. at 82; *see also Chao v. Malkani*, 452 F.3d 290, 297 (4th Cir. 2006) ("By authorizing the return of mistaken contributions within one year of payment, *see* 29 U.S.C. § 1103(c)(2)(A)(i), Congress struck a balance.  On the one hand, it granted employers the ability to seek a limited recovery, recognizing the inequity that may arise when employers incur costly losses for honest errors."); *Whitworth Bros. Storage Co. v. Cent. States Se. & Sw. Areas Pension Fund*, 982 F.2d 1006, 1017 (6th Cir. 1993) (a policy against refunding mistaken contributions to the employer would be arbitrary and capricious).

Courts have not yet decided whether nonvested, forfeited contributions fall within the § 1103 exception for mistaken contributions.  The Qualcomm Plan does not by its

-8-

terms define nonvested contributions as contributions made by mistake.  To avoid ambiguity, Qualcomm as settlor of its employee pension plan could have defined "assets of the plan," for purposes of its plan, as excluding nonvested employer matching contributions.   Qualcomm's pension plan is designed specifically to offer as a primary incentive matching contributions from the employer.  Under the terms of the Plan during the years at issue here, it is difficult to regard such matching contributions as contributions made mistakenly.  Though such contribution dollars do not ultimately vest, it is not easily said that the making of the contributions was based on a mistake of fact or law *at the time* the contributions were made.

One might say in such circumstances that the employer has made a mistaken actuarial prediction.  But, the Ninth Circuit has held that mistaken actuarial predictions about other plan benefits do not qualify as mistakes under § 1103.  *See British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund*, 882 F.2d 371, 376 (9th Cir. 1989).  *British Motor Car Distributors* was concerned with actuarial projections by trustees about plan participants' health insurance and premium rates.  The erroneous projections led to the employer overpaying for premiums.  The employer sought the return of $950,000 in surplus plan assets, claiming the mistake of fact exception.  While a simple arithmetic error might qualify, *British Motor Car Distributors* said, "we conclude that an actuarial projection cannot constitute a mistake of fact under [ERISA] section 403(c)(2)(A)(ii)." *Id.* at 376.  Extending this holding, nonvested forfeited contributions are not contributions made based on a mistake of fact and would not fall within the exception to the anti-inurement principle.  Therefore, Plaintiff states a plausible claim for relief.

Defendants disagree based on a reading of *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) and a strained analogy.  *Hughes* is distinguishable in that it considered a defined benefit plan.  In a defined benefit plan, the employer bears the financial risk that a plan continues fully funded.  Plan members are entitled to their defined benefit – nothing less and nothing more.  *Id*. at 440 ("The structure of a defined benefit plan

-9-

reflects the risk borne by the employer.  Given the employer's obligation to make up any shortfall, no plan member has a claim to any particular asset that composes a part of the plan's general asset pool.").  "Since a decline in the value of a [defined benefit] plan's assets does not alter accrued benefits, members similarly have no entitlement to share in a plan's surplus . . . ." *Id*. at 440-41.  A defined benefit plan contrasts with a Qualcomm-style defined contribution plan where plan members have a right to contributions.  Consequently, *Hughes* does not support Defendants' motion to dismiss.

Defendants analogize forfeited nonvested pension fund contributions to money charged for ordering on-line groceries that turn out to be out of stock.  Defs' Mem., Dkt. 15-1, at n.3.  They argue that using forfeited contributions for future matching contributions is like "substituting a different grocery item and crediting the amount paid for the first (out of stock) item towards the cost of the replacement item." *Id*. at n.4.  Perhaps Defendants will ultimately prove to be correct, but courts have not yet embraced that analogue.  The imagined scenario involves neither statutorily imposed fiduciary duties nor anti-inurement principles and it is insufficient to take Plaintiff's § 1103 claim for relief outside the realm of the plausible.  In short, the text of § 1103 and other courts agree that the anti-inurement rule sometimes permits plan contributions made by mistake to be returned to an employer.  However, no court has concluded that an employer's matching contribution intentionally made at the time an employee was employed and participating in a plan qualifies as a "mistake." The motion to dismiss Claim Three is denied.

Claims Four and Five.

Plaintiff asserts that Defendants violated § 1106 of ERISA.  Claim Four relies on subsection § 1106(a) while Claim Five rests on § 1106(b).  Section 1106(a)(1) of ERISA provides,

> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

-10-

> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
> . . .
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . .

Section 1106(b)(1) of ERISA provides,

> A fiduciary with respect to a plan shall not--
> (1) deal with the assets of the plan in his own interest or for his own account,

Plaintiff contends that Defendants violated § 1106(a) because nonvested contributions subject to forfeiture were either "property" of the Plan (as mentioned in § 1106(a)(1)(A)) or "assets" of the Plan (as mentioned in § 1106(a)(1)(D)) before they were turned into future employer contributions by a prohibited "transaction." And if "assets" of the Plan, Plaintiff contends that § 1106(b) was violated when Defendants used "assets" in the form of forfeited funds for future company contributions, thus violating the prohibition on dealing with plan assets for a fiduciary's own interest.

"In addition to imposing duties of loyalty and care, ERISA 'expressly prohibits certain transactions [under § 1106] where the potential for abuse is particularly acute.' ERISA broadly prohibits two kinds of transactions: (1) transactions between a plan and a party-in-interest; and (2) transactions between a plan and a plan fiduciary." *Lauderdale v. NFP Ret., Inc.*, No. 21cv0301-JVSKES, 2024 WL 751005, at *32 (C.D. Cal. Feb. 23, 2024) (citing 29 U.S.C. § 1106.). Defendants argue that the prohibited transaction rules of § 1106 are not implicated.

Neither side has identified a court decision that adopts their interpretation of § 1106, and this Court has found none. Defendants cite *Lockheed Corp. v. Spink*, 517 U.S. 882, 895 (1996), but that case holds only that the *paying out* of plan benefits to plan participants is not a prohibited transaction under § 1106. *Id.* ("In short, whatever the precise boundaries of the prohibition in § 406(a)(1)(D), there is one use of plan assets that it cannot logically encompass: a *quid pro quo* between the employer and plan participants in which

-11-

the plan pays out benefits to the participants pursuant to its terms.").  The Complaint in this case does not allege a paying out of plan benefits, but an "exchange" or transaction of existing Plan assets for future employer contributions or a use of Plan assets for the benefit of Qualcomm as a party in interest.  Complaint, at ¶ 51.  Defendants cite *Collins v. Pension & Ins. Comm. of S. Cal. Rock Prod. & Ready Mixed Concrete Associations*, 144 F.3d 1279, 1282 (9th Cir. 1998), but that case speaks to *future* employer *contributions* and concludes that future contributions are not present "plan assets," as that term is used in § 1106.  *Id.* ("Although ERISA does not explicitly define 'plan assets,' a plain interpretation of the term does not encompass future contributions not yet made.") (Citation omitted).

A plausible § 1106(b) violation is the easier claim for relief for Plaintiff to make based on a plain reading of the statute.  Defendant Qualcomm is plausibly a fiduciary with respect to its pension plan.  As a fiduciary, Defendant Qualcomm plausibly did deal with the assets of the plan by doing with nonvested contribution money something other than leaving it untouched.  And by dealing with the nonvested contribution money in such a way that that it benefitted Qualcomm's own interest or for its own account, Plaintiff plausibly alleges a completed prohibited deal under § 1106(b).  Once again, this assumes nonvested money in a plan falls within the statutory language of "assets" of the plan.

As mentioned above, ERISA does not define "assets."  *See* 29 U.S.C. § 1002 (definitions); *Acosta v. Pac. Enterprises*, 950 F.2d 611, 620 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992) ("ERISA does not expressly define the term "assets of the plan."). In the section for ERISA definitions, 29 U.S.C. § 1002(43) says that "the term 'plan assets' means plan assets as defined by such regulations as the Secretary may describe." Unfortunately, the Secretary of Labor has not defined plan assets in terms of employer contributions -- whether vested or nonvested.  *Acosta*, 950 F.2d at n.7 ("The regulations cited define and establish rules regarding two particular types of "plan assets": plan investments in another entity and participant contributions.  29 C.F.R. §§ 2510.3–101 and –102.  The regulations do not purport to be exhaustive definitions of plan assets generally.").  Consequently, regulations do not construe the term.  Likewise, the Ninth

-12-

Circuit has not construed the term for purposes of § 1106. *Id*. at 620 ("Nor has this circuit had an occasion to delineate the precise boundaries of the term as it is used in section 406(b)(1)."). What the Ninth Circuit has done is noted an orientation towards a broad definition in order to better protect beneficiaries. "In light of Congress' overriding concern with the protection of plan participants and beneficiaries, courts have generally construed the protective provisions of § 406(b) broadly." *Id*. (citations omitted). To do this, the Ninth Circuit instructs district courts to adopt a functional approach for defining plan assets. *Id.* ("Appellees argue that the term 'assets of the plan' encompasses only financial contributions received by the plan administrators. We decline to cabin the term in such a restricted definition. Congress' imposition of a broad duty of loyalty upon fiduciaries of employee benefit plans counsels a more functional approach. To determine whether a particular item constitutes an 'asset of the plan,' it is necessary to determine whether the item in question may be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants or beneficiaries.").

Using the functional approach required by *Acosta,* it is easy to come to the conclusion that nonvested employer contributions may not be used to benefit the employer / fiduciary by reducing its own financial burden to make contributions in the future when done at the expense of not defraying the administrative costs borne by participants and beneficiaries. Nonvested contributions fall within the functional definition of assets of the pension plan. In terms of the statute, Count Five's claim for relief is that "A fiduciary [Qualcomm] with respect to a plan [the Qualcomm pension plan] shall not -- (1) deal with [do something other than leave untouched] the assets of the plan [nonvested employer contributions] in his [Qualcomm's] own interest or for his [Qualcomm's] own account."

Defendants do not really engage with the statutory language of § 1106(b) or apply *Acosta*'s functional approach. Instead, Defendants assert that using forfeited contributions as they did is permitted for defined benefit plans, and if permitted for defined benefit plans, then the use is likewise permitted for defined contribution plans because the statutory language does not differentiate.

-13-

Defendants put a great deal of reliance, for this assertion, on a proposed regulation. Recently, the Department of Treasury has proposed guidance that a defined contribution pension plan may use forfeited contribution money to reduce an employer's future contributions to the plan.  In 88 FR 12282-01 (dated Feb.27, 2023), the Department of the Treasury proposed language that would give defined contribution plans (such as Qualcomm's) the choice of using forfeited contributions for an employer's future contributions.  The proposed language states:

> (b) Forfeitures under a qualified defined contribution plan. In the case of a trust forming a part of a qualified defined contribution plan (as described in section 414(i)) that provides for forfeitures, the plan must provide that:
>
>> (1) Forfeitures will be used for one or more of the following purposes:
>>
>>> (i) To pay plan administrative expenses;
>>> (ii) *To reduce employer contributions under the plan*; or
>>> (iii) To increase benefits in other participants' accounts in accordance with plan terms; and
>>
>> (2) Forfeitures will be used no later than 12 months following the close of the plan year in which the forfeitures were incurred under plan terms.
>
> (c) Transition rule for forfeitures incurred during plan years beginning before January 1, 2024.  For purposes of paragraph (b)(2) of this section, forfeitures incurred during any plan year that begins before January 1, 2024, will be treated as having been incurred in the first plan year that begins on or after January 1, 2024.
>
>> (d) Applicability date.  This section applies for plan years beginning on or after January 1, 2024.

*See*, https://www.regulations.gov/document/IRS-2023-0007-0001 (emphasis added).  The proposed rulemaking explains the purpose for the guidance:

> the proposed regulations would clarify that forfeitures arising in any defined contribution plan . . . may be used for one or more

-14-

of the following purposes, as specified in the plan:

(1)     to pay plan administrative expenses, (2*) to reduce employer contributions under the plan*, or (3) to increase benefits in other participants' accounts in accordance with plan terms.

*Id.* (emphasis added).  The proposed regulation has not yet been adopted.  And it is noteworthy that the regulation is proposed by the Secretary of the Treasury rather than the Secretary of the Department of Labor.  ERISA specifies that it is the Secretary of Labor who has authority to define what are assets of a pension plan.  If adopted, the rule would certainly mean favorable tax treatment by the Internal Revenue Service of plan actions taken by fiduciaries in Defendants' shoes.  But the rule has not yet been adopted and has no force of law.  What persuasive value it does have is not sufficient to persuade this Court that Plaintiff's claim is implausible.

The alleged violation of § 1106(a) in Claim Four is a closer question.  However, with little authority supporting the argument against finding the claim to be plausible and the plain meaning of the statutory language supporting the claim as pleaded, Claim Four also passes the plausibility test and survives Defendants' motion to dismiss.

Claim Six.

For Claim Six, Plaintiff asserts that Qualcomm had a fiduciary duty to monitor.  Plaintiff alleges that it breached that duty by failing to ensure that the Defendant's Plan Committee acted for the sole benefit of the plan participants and beneficiaries.  Because the Court concludes that the allegations of breach of other ERISA fiduciary duties state plausible claims, Plaintiff's derivative claim that Defendants violated the duty to monitor also states a plausible claim for relief, and survives the motion to dismiss.  *Cf. Bracalente v. Cisco Systems*, 2023 WL 5184138 at 83-4 (N.D. Cal. Aug. 11, 2023) (dismissing derivative ERISA failure to monitor claim where underlying ERISA claims are dismissed).

-15-

## V.   CONCLUSION

The Supreme Court instructs courts to take a context-sensitive view in ERISA cases and separate the meritorious claims from the implausible claims. *Dudenhoeffer*, 573 U.S. at 425. Taken in context, Plaintiff describes plausible claims for relief. Therefore, the motion to dismiss Claims One through Six is denied.

**IT IS SO ORDERED.**

DATED:    May 24, 2024

_____

**HON. ROGER T. BENITEZ**
United States District Judge

-16-